**STATE FARM FIRE AND
CASUALTY COMPANY**

v.

**Michele Denise SWEAT, et al.**

**Civ. A. No. C81–2056.**

United States District Court,
N. D. Georgia,
Atlanta Division.

March 11, 1982.

Eugene G. Partain, Robert M. Travis, Thomas Harper, Powell, Goldstein, Frazer & Murphy, Richard G. Greer, Greer, Klosik & Daugherty, Atlanta, Ga., for plaintiff.

Laurence A. Marder, Michael Weinstock, Michael Weinstock, P. C., Atlanta, Ga., for defendants.

Mark Dickerson, Asst. Atty. Gen., Atlanta, Ga., for defendant/intervenor.

## ORDER

ORINDA D. EVANS, District Judge.

In this diversity declaratory judgment action, Plaintiff State Farm Fire & Casualty Company [1] seeks a declaratory judgment that it has no additional liability to Defendants, its insureds, for no-fault insurance benefits beyond those previously paid. The action is before the Court on State Farm's Motion for Summary Judgment.

### 1. *Background*

In 1975, the Georgia legislature enacted the Georgia Motor Vehicle Accident Reparations Act, Ga.Code Ann. § 56–3401b *et*

---

1. Throughout this opinion, the Court will use the designation "State Farm" to refer to Plaintiff and to its sister company, State Farm Mutual Automobile Insurance Company.

*seq.* (the "Act"). The Act does the following:

(1) requires motorists to carry minimum no-fault insurance of $5,000

(2) requires insurers to provide this minimum coverage

(3) requires insurers to offer $45,000 additional, optional no-fault coverage

(4) specifies the manner in which this optional coverage is to be offered

(5) provides stiff penalties for late payment of no-fault benefits in the form of a penalty equal to 25% of the amount due, attorneys' fees and in addition, where payment is made more than 60 days after the proof of loss is filed, punitive damages.[2]

The parts of the Act most pertinent to this opinion are the following subsections of section 56–3404b:

(a) Each insurer shall also make available on an optional basis the following coverage:·

(1) an aggregate limit of benefits payable without regard to fault up to $50,000 per person which may be rejected, or reduced to not less than an aggregate limit of benefits payable without regard to fault of $5,000 per person, by written consent of the policyholder. . . .

\*     \*     \*     \*     \*     \*

(b) Each application for a policy of motor vehicle liability insurance sold in this State must contain separate spaces for the insured to indicate his acceptance [or] rejection of each of the optional coverages listed in subsection (a) above and no such policy shall be issued in this State unless these spaces are completed and signed by the prospective insured.

(c) On and after the effective date of this Amendment, all named insureds in existing motor vehicle liability policies who have not previously responded to an offer to accept or reject the optional coverages required to be offered by this Chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this section: Provided, however, that the failure of an insured to notify his insurer of his written acceptance or rejection within 30 days after written notice of the offer has been mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy, shall constitute a rejection of the optional coverage.

The Act became effective on March 1, 1975. In 1977, William Jones applied to State Farm Mutual Automobile Insurance Co. for no-fault automobile insurance. State Farm's agent filled out the application form, apparently based on information given to him by Jones. It was (and still is) the practice of State Farm to offer four levels of no-fault coverage: the required $5,000, as well as coverage of $10,000, $25,000, or $50,000.[3] The application form presented to Jones listed each of these coverages, with small blocks labeled "Reject" or "Accept" provided for each of the four levels of coverage. According to State Farm's agent, he advised Jones of the available optional coverages and Jones indicated he did not want them. The agent put a check mark in the "Accept" block for the $5,000 coverage, and also checked the "Reject" blocks for the other three levels of coverage. Jones signed the completed application only once, in the single space provided at the bottom of the application.

On April 24, 1978, Jones was involved in an automobile accident, and suffered injuries covered by his no-fault policy. He filed a claim with State Farm, which after some

---

**2.** Furthermore, the burden is on the insurer to prove good faith to avoid imposition of sanctions. *See* Ga.Code Ann. § 56–3406b(c).

**3.** The Act required Jones to purchase at least $5,000 coverage, Ga.Code Ann. § 56–3403b(b), and also required State Farm to make the $50,000 offer to Jones (this is, to offer him the mandatory $5,000 coverage plus optional coverage of $45,000). Ga.Code Ann. § 56–3404b(a)(1). The regulations of the Georgia Insurance Department required State Farm to offer the intermediate $10,000 and $25,000 levels of coverage. Ga.Code of Rules and Regulations § 120–2–28.06(1).

delays paid the claim up to the policy limit.[4] Jones had incurred medical expenses that exceeded his coverage, however, and asked State Farm for reimbursement for the additional sums as well. When State Farm refused further reimbursement, Jones brought suit in the State Court of Muscogee County.

The Complaint filed by Jones contained two counts. In Count II, Jones contended that he was entitled to protection under the optional no-fault coverages not included in his policy. His theory was that Ga.Code Ann. § 56–3404(b) required that optional coverages be rejected by the insured's *signature* in a space next to the "reject" block on the application form. Anything less than that did not effect rejection of optional no-fault coverage. Jones did not contend that his $5,000 no-fault policy provided less coverage than he had requested or intended to purchase. Rather, Count II of his lawsuit simply contended:

\* \* \* \* \* \*

### 15.

Georgia Code § 56–3404b(b) requires that insurers such as Defendant make available on an optional basis increased coverages for Personal Injury Protection up to $50,000.00 per person, and further requires that the insurer such as Defendant obtain from the insured an acceptance or rejection of such optional coverage.

### 16.

In the absence of such rejection, an insured is presumed to have Personal Injury Protection equal to the maximum optional coverage, $50,000.00 per person.

### 17.

Defendant failed to obtain the requisite rejection from Plaintiff of optional Personal Injury Protection coverages, and Plaintiff's Personal Injury Protection

coverage was therefore $50,000.00 per person, rather than $5,000.00 per person.

\* \* \* \* \* \*

The precise nature of Jones' cause of action under Count II is unclear from his Complaint. However, it is noted that the *Jones* opinion describes it, by implication, as a cause of action for reformation of contract.

In Count I of the Complaint, Jones sought attorneys' fees and punitive damages under section 56–3406b(c) for the late payment of the part of his claim which had been paid, albeit tardily.

State Farm filed an Answer to the Complaint, admitting certain averments of Jones' Complaint and denying others. The Answer contained no plea to the jurisdiction. No counterclaim was filed.

Both sides moved for summary judgment on both counts. State Farm's motion was granted; Jones' was denied.

Jones appealed to the Georgia Court of Appeals, which reversed the trial court's entry of summary judgment in State Farm's favor on both counts. *Jones v. State Farm Mutual Automobile Insurance Co.*, 156 Ga.App. 230, 274 S.E.2d 623 (1980).

On Count I, the Court found State Farm's payments had been late; summary judgment in its favor on this count was improper for this reason. It also found summary judgment was properly denied the insured, however, since the question of State Farm's good faith had not been adjudicated.

On Count II, the Court similarly found neither side to have been entitled to summary judgment.

State Farm was not entitled to summary judgment because, the Court held, the Act requires the optional coverages to be offered through the application in accordance with section 56–3404b(b). State Farm's no-

---

4. In fact, State Farm had paid Jones more than the $5,000 policy limit. *See Jones v. State Farm Mutual Automobile Co.*, 156 Ga.App. 230, at 231, 274 S.E.2d 623. The *Jones* opinion does not explain this discrepancy, which is irrele-

.vant to its decision. However, the trial court's order indicates Jones had $5,000 excess medical payments coverage, as well as the $5,000 minimum no-fault coverage.

fault application form did not comply with the requirements of section 56–3404b(b). Specifically, the lack of a signature space next to the "Accept" and "Reject" blocks in the optional coverages section rendered the form deficient. Interpreting sections 56–3404b(a), (b) and (c) together, the court held State Farm had failed to negative the existence of a "continuing offer" of optional no-fault coverage which could *only* be terminated by (a) the use of a proper application form in the first instance or (b) by the use of a subsequent written instrument meeting the requirements of section 56–3404b(c). The court specifically noted the deposition testimony of State Farm's agent that Jones had been informed (presumably verbally) of the optional coverages and turned them down; it found such testimony to be of no avail to State Farm.

Turning then to Jones' cross-motion, the court found the motion had been properly denied because the record was silent as to whether Jones had received the section 56–3404b(c) written notice which would have terminated the continuing offer of optional coverage. Then, in dicta, the court went on to state that if the facts subsequently (on remand) showed Jones had not received the aforesaid notice, he would be entitled to claim the optional coverage upon tendering the additional premium.[5] In further dicta, the court stated that "until that time, however, there is no contract for optional coverage to 'reform.'" 156 Ga.App. at 234, 274 S.E.2d 623.

In summary, *Jones* implicitly held [6] that a penalty for noncompliance with section 56–3404b is the providing of retroactive, post-risk, additional insurance coverages.[7] This penalty obtains even if the insured verbally evidenced intent to reject optional coverages. In order to exact the penalty, it is not necessary that the insured show specific injury or monetary loss occasioned by the lack of written rejection of the policy; rather, only the absence of written rejection need be shown. This penalty, *i.e.,* the providing of retroactive *post-risk* insurance coverage, is referred to hereinafter as the "continuing offer penalty." [8]

State Farm and many of its insureds were quick to react to the *Jones* decision. If the Act provided for a "continuing offer" of optional no-fault coverage of $45,000,

**5.** The court also noted, in an apparent reference to the fact that the case was filed in a state court of limited jurisdiction, that reformation was not available "in the procedural...posture of this case." *Id.* at 233, 274 S.E.2d 623.

**6.** As stated above, the *Jones* court's statements in connection with its affirmance of denial of Jones' motion appear to be dicta; however, the portion of the opinion pertaining to reversal of entry of summary judgment for State Farm on Count II is not interpreted by this Court as dicta.

**7.** The Court has also considered a second possible interpretation of *Jones.* The *Jones* court might have intended its "reformation of contract" language to indicate that once Jones accepted the "continuing offer," *State Farm* could attempt to use the reformation of contract theory to reform the contract to reflect the true intention of the parties, that is, State Farm could attempt to prove that the parties had only intended a sale and purchase of the minimum coverage. This seems a less plausible interpretation, because it is inconsistent with the *Jones* court's refusal to consider the intent of the parties at the outset of its analysis, and because it would leave undefined the nature of Jones' cause of action. The Court notes that even if this interpretation is correct, the same result would obtain as to these Defendants' case; Defendants here do not contend that they actually intended to purchase the optional no-fault coverage, and therefore State Farm would presumably be able to successfully argue reformation of contract.

**8.** In *Jones,* State Farm offered the deposition testimony of its agent that Jones had been offered the optional coverages and had intended to knowingly reject them in writing when he affixed his signature at the bottom of the application. The court held that this evidence was insufficient to satisfy State Farm's evidentiary burden on this point, 156 Ga.App. at 233, 274 S.E.2d 623, thereby indicating its lack of interest in the actual intent of the parties to the insurance contract. Consequently, it is clear that the *Jones* court did not intend the "continuing offer" to serve as a contract law "remedy," to compensate Jones for State Farm's failure to live up to his reasonable and lawful expectations, but rather as a "penalty" to punish State Farm for its failure to conform its application form to the dictates of section 56–3404b(b).

and if State Farm's insurance application forms failed to properly terminate this offer, then it was possible for any insured who had signed the same form as William Jones to "accept" the "continuing offer" by tendering additional premiums at a later time.[9] To insureds who had already been involved in accidents resulting in no-fault claims exceeding the $5,000 minimum coverage, the "continuing offer" was exceedingly attractive.

State Farm sought review of the Court of Appeals decision in the Georgia Supreme Court. The Supreme Court granted certiorari, and heard oral argument. However, on July 17, 1981, it dismissed the writ of certiorari as improvidently granted. 248 Ga. 46, 280 S.E.2d 837 (1981).

Following the announcement of the Court of Appeals decision in Jones, other post-accident insureds who had exhausted (or were about to exhaust) their no-fault policy limits began to file claims against State Farm and other insurance companies. Their demand letters generally consisted of a statement of acceptance of the continuing offer of the optional coverages, accompanied by an offer to tender the additional premium required to purchase such coverage. These claimants did not seek relief based on a contention that their coverage differed from what they thought they had purchased. Rather, their claims were premised

on the "continuing offer" theory of the Jones decision. Defendants in this action are such Jones-theory claimants.

State Farm has taken the position that Jones does not require it to provide retroactive insurance coverage to such claimants. State Farm's reaction to the Jones-theory claims of its insureds was to file a lawsuit against each claimant in this Court,[10] seeking a declaratory judgment that Jones does not render it liable to provide such coverage.[11] State Farm raises both state law and state and federal constitutional arguments against the imposition of retroactive insurance liability. The Court will discuss some of these arguments in detail later in this Order.

2. *Propriety of Declaratory Judgment*

State Farm comes to this Court seeking declaratory judgment, pursuant to 28 U.S.C. § 2201, regarding its liability to Defendants under the Act and the Jones decision. Section 2201 permits this Court to grant a declaratory judgment "in a case of actual controversy within its jurisdiction."

Defendants are citizens of Georgia, while Plaintiff is an Illinois corporation with its principal place of business in Illinois. The case grew out of a request by Defendants that State Farm increase their no-fault insurance coverage [12] by $45,000, and thus the amount in controversy exceeds $10,000.[13]

**9.** Inasmuch as State Farm had interpreted section 56–3404b(c) to apply only to insurance contracts existing as of the effective date of the Act, it apparently had made no mailings of the section 56–3404b(c) form to insureds who applied for policies after the effective date of the Act (March 1, 1975).

**10.** In a few cases, the Jones-theory claimant filed suit against State Farm in state court before State Farm could file a declaratory judgment action in this Court. State Farm removed those cases to this Court under 28 U.S.C. § 1441, and filed counterclaims for a declaratory judgment in each case.

**11.** There are approximately 100 such cases pending before this Court, most of which involve the State Farm companies. In deciding State Farm's summary judgment motion in this action, the Court has considered arguments raised by other Jones-theory claimants in many of these similar cases.

**12.** Defendant Richard Sweat, the named insured on the policy at issue, signed an application identical to the Jones application on May 8, 1979. On August 7, 1979, Defendant Michele Sweat, his wife, suffered injuries covered by the no-fault provisions of this policy.

**13.** By requesting that State Farm increase their coverage by $45,000, Defendants placed this amount in controversy; if the Court should decide for Defendants, then State Farm's potential liability as a result of this case is in that amount. Therefore, this amount governs for the purposes of the jurisdictional amount, regardless of whether Defendants have presently accrued $10,000 in expenses that would be covered by the increased coverage. It does not "appear to a legal certainty" that Defendants' ultimate claim against State Farm could not total more than $10,000, *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Addi-

The Court therefore has jurisdiction over this action under 28 U.S.C. § 1332(a).

■ The Court has the discretionary power to grant declaratory judgment relief, then, if this case involves "an actual controversy." The Supreme Court long ago held that an insurance company's declaratory judgment action against its insured regarding the existence of coverage can be an "actual controversy" within the meaning of section 2201 and its predecessor. *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 244, 57 S.Ct. 461, 465, 81 L.Ed. 617 (1937). The use of the declaratory judgment remedy in insurance coverage cases in federal courts [14] is now commonplace. 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2760, at 792 (1973); *see, e.g.,* cases cited therein at notes 39–44.

■ In the Court's opinion, there is no question here but that there is a substantial and immediate controversy between the parties. Defendants have made demand for immediate payment of additional no-fault benefits. State Farm contends it is not liable to pay the benefits. If State Farm is wrong, it may be liable for penalties, attorney's fees and punitive damages under Georgia Code Ann. § 56–3406b for failure to pay a claim within 60 days.

Defendants' primary objection to the Court's exercise of jurisdiction under the Federal Declaratory Judgment Act stems from their contention that, in this case, there is nothing left for the Court to "declare" with respect to their entitlement to additional coverage. Defendants argue that the Georgia Court of Appeals has authoritatively interpreted the relevant sections of the Act. They contend that State Farm is merely asking this Court to reconsider the interpretation of the Act placed on it by the Court of Appeals. If Defendants are correct in their assertion, State Farm could have no cognizable claims under the Federal Declaratory Judgment Act, or any other federal act, as this Court is bound in a diversity case to apply state law; under the *Erie* doctrine, the federal court must accept as a given any interpretation placed on a state statute by the state appellate courts.

In its Complaint, State Farm has asked the Court to grant declaratory relief in a number of respects. First, it asks the Court to declare that the "continuing offer" penalty of *Jones* is inconsistent with the nature of insurance; State Farm claims this part of the *Jones* opinion is "ambiguous dicta." As described above, the Court agrees that the *Jones* language establishing the continuing offer penalty is dicta, at least in part. However, the language is anything but ambiguous. The *Jones* court quite clearly stated that the consequence of State Farm's failure to include separate signature spaces on its form, coupled with its possible failure to send Jones the notice contemplated by section 56–3404b(c), would be to create a continuing offer, and Jones "would, in our opinion, be entitled to 'accept' this offer, tender the premiums, and enforce the resulting contract." 156 Ga.App. at 234, 274 S.E.2d 263. Thus, whether it is dicta or not, the unambiguous pronouncement of the Georgia Court of Appeals on the effect of failure to comply with section 56–3404b, to wit, the continuing offer penalty, must be

---

tional medical expenses, attorney's fees, penalties and punitive damages are all distinct possibilities. Consequently the Court holds that the jurisdictional amount of 28 U.S.C. § 1332(a) is satisfied.

14. It may be the case that a Georgia court would not hear this declaratory judgment action had State Farm brought it in that forum. *Baron v. State Farm Mutual Automobile Insurance Co.,* 157 Ga.App. 16, 18–19, 276 S.E.2d 78 (1981); *Shield Insurance Co. v. Hutchins,* 149 Ga.App. 742, 744–45, 256 S.E.2d 108 (1979). This is a diversity case, and consequently state law supplies the rule of decision as to the substantive issues in this case. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The question of this Court's authority to entertain a declaratory judgment action, however, is determined under federal law. *M. Swift & Sons, Inc. v. Lemon,* 24 F.R.D. 43, 45 (S.D.N.Y.1959); *see also* dicta in *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 674, 70 S.Ct. 876, 880, 94 L.Ed. 1194 (1950) ("that the declaratory remedy which may be given by the federal courts may not be available in the State courts is immaterial"); 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2756 (1973).

taken by this Court as authoritative and conclusive.

State Farm also argues, however, that section 56–3404b as interpreted in *Jones* violates the due process clauses of the Georgia and United States Constitutions and the "no impairment of contract" guarantee of the United States Constitution. State Farm further asks the Court to declare that the *Jones* holding would be applied prospectively only under Georgia law. The *Jones* decision clearly did not address these issues; consequently this Court is free to do so in the context of a declaratory judgment action.[15]

### 3. *Constitutional Law Arguments*

State Farm argues that the Act as interpreted in *Jones* violates its constitutional rights, on two theories. First, it argues that the "continuing offer" penalty impairs the obligation of contracts and thereby violates the state and federal constitutions, by analogy to *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). Second, State Farm contends that section 56–3404b(b) is so vague that it does not convey adequate warning as to the conduct it proscribes or requires of insurers and it therefore violates State Farm's due process rights. *See, e.g., United States v. Southern Railway Co.*, 364 F.2d 86 (5th Cir. 1966), *cert. denied*, 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967). Third, an argument also exists that the Act (at least prior to its interpretation in *Jones*) violates State Farm's due process rights by failing to convey adequate warning of the penalty for violation of its terms. *Cf. Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957) ("Engrained in our concept of due process is the requirement of notice.... Notice is required before property interests are dis-

turbed, before assessments are made, before penalties are assessed").

Though the Court may address State Farm's constitutional law arguments, it is obliged to look first to see if the case can be determined on other grounds. In this regard, the Court notes that the accident for which Defendants seek additional coverage occurred on August 7, 1979, before the *Jones* decision. Therefore, if the Court were to determine that a Georgia court would likely apply *Jones* prospectively only, it would be unnecessary to consider State Farm's state and federal constitutional arguments in order to resolve the question of State Farm's additional liability to Defendants.

The balance of this Order explores the question of whether this Court may properly consider the issue of prospective versus retroactive application of *Jones,* and if so, the result. Since the Court determines it may consider the issue, and finds upon analysis that a Georgia court would likely apply *Jones* prospectively only, it is unnecessary to reach the constitutional issues in order to declare the respective rights and obligations of the parties presently before the Court. In other words, putting the constitutional arguments aside, State Farm is nonetheless entitled to a declaration of no further liability to Defendants, because a Georgia court would not apply *Jones* retroactively.

### 4. *Abstention*

■ Although the Court has the discretionary jurisdiction under 28 U.S.C. § 2201 to hear this declaratory judgment action, it might be argued that the Court should abstain from doing so under the theory of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Alabama Public Service Commission v. South-*

---

**15.** The Court also finds that the doctrines of res judicata and collateral estoppel do not prevent State Farm from raising these arguments in this action on the theory that they could have litigated them in *Jones.* Ga.Code Ann. § 110–501, which the Georgia courts apply both to res judicata and to collateral estoppel cases, requires the party who seeks to use these doctrines in the second case to have been a party

or in privity with a party to the first case. *See, e.g., Gilmer v. Porterfield*, 233 Ga. 671, 212 S.E.2d 842 (1975) (res judicata); *Walka Mountain Camp v. Hartford Accident & Indemnity Co.*, 222 Ga. 249, 149 S.E.2d 365 (1966) (res judicata); *Montgomery v. DeKalb Steel, Inc.*, 144 Ga.App. 191, 240 S.E.2d 741 (1977) (collateral estoppel).

*ern Railway Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).[16]  The *Burford* abstention doctrine suggests that a federal court abstain from deciding cases involving "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."  *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).  In practice, however, *Burford* abstention is generally limited to cases in which a federal court decision would "disrupt a state administrative process...or unnecessarily enjoin[ ] state officials from executing domestic policies."  *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959) (citations omitted).  *See, e.g.,* 17 C. Wright et al., *Federal Practice and Procedure* § 4244 (1978), and cases cited therein at 485 nn.8 & 9.  Neither of these factors is present in this case.  Nor can the Court abstain simply because it faces difficult questions of state law; Congress granted diversity jurisdiction to the federal courts, and presumably intends them to exercise it.  *See Meredith v. Winter Haven,* 320 U.S. 228, 236, 64 S.Ct. 7, 12, 88 L.Ed. 9 (1943) ("Congress having adopted the policy of opening the federal courts to suitors in all diversity cases...we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine"); *see also McNeese v. Board of Education,* 373 U.S. 668, 673 n.5, 83 S.Ct. 1433, 1436 n.5, 10 L.Ed.2d 662 (1963).  Federal courts have repeatedly refused to abstain simply because of the difficulty of determining state law in a diversity case.  *See, e.g.,* cases cited in 17 C. Wright et al., *Federal Practice and Procedure* § 4246, at 499 n.28 (1978).

There are, however, important reasons for the Court *not* to abstain in this action.  As has been noted, abstention exacts a high price by delaying the final adjudication of a plaintiff's claim.  *See, e.g., Baggett v. Bullitt,* 377 U.S. 360, 378–79, 84 S.Ct. 1316, 1326–27, 12 L.Ed.2d 377 (1964);  Field, *Abstention in Constitutional Causes: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1085–86 (1974).  This problem is particularly serious in this case; the sixty-day penalty provisions of the Act make it vital for State Farm to obtain a quick resolution of its liabilities resulting from *Jones.*  The Georgia Supreme Court has agreed to decide questions certified to it by the United States Supreme Court or a federal Court of Appeals, but not by this Court.  Rule 36(a), Rules of the Supreme Court of Georgia.  Nor does it appear that a Georgia state court would hear a declaratory judgment action of this nature, should State Farm bring it in that forum.  *See Baron v. State Farm Mutual Automobile Insurance Co.,* 157 Ga.App. 16, 18–19, 276 S.E.2d 78 (1981).  State Farm could raise the arguments it brings before this Court as defenses in a state court action brought on the policy by these Defendants or another *Jones*-theory claimant, but presumably such an action would not be brought until State Farm had already become vulnerable to claims for additional penalties, attorney's fees, and punitive damages under section 56–3406b(c).  This federal court declaratory judgment action appears to be the only means by which State Farm can obtain an adjudication of its claims without running afoul of the Act's penalty provisions.

The abstention doctrine, the Supreme Court has stated,

> is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers.  Ascertainment of whether there exists the "special circumstances" prerequisite to its application must be made on a case-by-case basis.

---

**16.**  The related abstention doctrine of *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed.2d 971 (1941), which is intended to prevent unnecessary federal court decisions on federal constitutional issues, does not apply in this case, because the Court does not decide any federal constitutional issues in this opinion.

*Baggett,* 377 U.S. at 375, 84 S.Ct. at 1324 (citations omitted). *See also Colorado River Water Conservation District,* 424 U.S. at 813, 96 S.Ct. at 1244 ("abstention from the exercise of federal jurisdiction is the exception, not the rule"). Furthermore, it is the law of this Circuit that before making the "extraordinary decision" to abstain, "[a] district court must carefully assess the totality of circumstances presented by a particular case. This requires a broad inquiry which should include consideration of the rights at stake and the costs of delay pending state court adjudication." *Duncan v. Poythress,* 657 F.2d 691, 697 (1981).[17] After considering all the circumstances, the court concludes that abstention is not justified in this case.

### 5. *Prospective Application of Jones*

■ State Farm argues that this Court should declare that *Jones* is to be given prospective effect only. State Farm asserts that the next Georgia court to hear a *Jones*-type case would conclude that *Jones* should apply only prospectively, in the interest of fairness to the parties.

As noted above, the Court has elected not to rule on State Farm's constitutional arguments, because there is a narrower basis for a ruling that will adjudicate the claims of the particular parties before the Court. By proceeding in this manner, the Court is neither accepting nor rejecting State Farm's constitutional arguments. Rather, they are simply left for adjudication at a future time, if necessary, in either a state or federal forum.

In *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court discussed at length the historical development of the doctrines of prospective and retroactive application of judicial decisions. *Id.* at 622–29, 85 S.Ct. at 1733–37. The Court concluded that although retroactive application of judicial decisions is the general rule, "in appropriate cases the Court may in the interest of justice make the rule prospective." *Id.* at 628, 85 S.Ct. at 1737. *See also Chevron Oil v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The law of Georgia is in accord. *See, e.g., Walker v. Walker,* 247 Ga. 502, 277 S.E.2d 45 (1981); *Strickland v. Newton County,* 244 Ga. 54, 258 S.E.2d 132 (1979); *Allan v. Allan,* 236 Ga. 199, 223 S.E.2d 445 (1976). In two recent decisions, the Georgia Court of Appeals has employed the test set forth in *Chevron Oil, supra,* to determine whether the interest of justice justified apply a decision only prospectively. *Gainesville Financial Services, Inc. v. McDougal,* 154 Ga.App. 820, 270 S.E.2d 40 (1980); *Financeamerica Corp. v. Drake,* 154 Ga.App. 811, 270 S.E.2d 449 (1980). State Farm argues that a Georgia court confronted with a *Jones*-type case would also apply the *Chevron Oil* test and would decide that *Jones* should not apply retroactively.[18]

In *Chevron Oil,* the Supreme Court considered three factors in deciding not to apply an earlier decision retroactively.

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application for "[w]here a decision of this

---

**17.** Cases decided by the former Fifth Circuit Court of Appeals before October 1, 1981 are the law of the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). *Duncan* was decided three days before this cut-off date.

**18.** The Georgia Court of Appeals has already decided to apply *Jones* retroactively in one sense, of course, in that it granted relief to Jones himself. This does not foreclose the Georgia courts from later deciding that a judicial opinion should not apply retroactively as to subsequent litigants. *See, e.g., Walker, supra; Strickland, supra; Allan, supra; Gainesville Financial Services, supra; Financeamerica, supra.*

Court would produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106, 92 S.Ct. at 355 (citations omitted). The Court will consider these three factors in reverse order.

A retroactive application of *Jones* would permit Defendants and other *Jones*-theory claimants (all of whose accidents occurred prior to the effective date of the *Jones* decision) to purchase post-accident insurance coverage. In determining whether this is a "substantial inequitable result," the Court must perform a balancing test. It is true that retroactive application of *Jones* might serve to afford coverage to Georgia citizens who were not properly informed of their rights to purchase optional coverage. Balanced against this factor, however, are strong equity arguments in favor of prospective application of *Jones*. First, it is obvious that *Jones* goes beyond the policy goal of redressing the effects of uninformed purchases of no-fault insurance. The *Jones* court rejected State Farm's proffered evidence that its agent had in fact informed Jones of these coverages; as a result, retroactive application of *Jones* presumably would permit *Jones*-theory claimants to purchase post-accident coverage even if they *had* been informed of the optional coverages and had chosen to reject them. The retroactive application of *Jones* would result in windfalls to these persons. Furthermore, for reasons set forth below, the Court has concluded that the "continuing offer" penalty inflicted upon State Farm by *Jones* could not have been foreseen by State Farm. In other words, retroactive application of *Jones* "would produce the most 'substantial inequitable results' on vested contractual rights." *Financeamerica*, 154 Ga.App. at 819, 270 S.E.2d 449, quoting *Chevron Oil*, 404 U.S. at 108, 92 S.Ct. at 356. For these reasons, the Court believes that a Georgia court would find the equities balanced in favor of prospective application of *Jones*.

In applying the second *Chevron Oil* factor, Georgia courts consider whether retroactive application of a judicial decision would "further the purpose and operation" of the statute it interprets, and promote stability in the regulation of the industry affected by the statute. *Gainesville Financial Services*, 154 Ga.App. at 822, 270 S.E.2d 40, quoting *Financeamerica*, 154 Ga.App. at 818–19, 270 S.E.2d 449. It is obvious that unexpectedly forcing insurance companies for the first time to provide post-accident insurance coverage does not promote stability in the regulation of the insurance industry. Nor is the retroactive application of *Jones* necessary to further the purpose and operation of the Act; insurers will be forced to redesign their application forms to comport with *Jones* to avoid making "continuing offers" to insureds who purchase insurance *after* the effective date of the *Jones* decision. For these reasons, the Court concludes that a Georgia court would find that the second *Chevron Oil* factor militates in favor of prospective application of *Jones*.

The remaining *Chevron Oil* factor concerns the expectations of the parties. For prospective application to be appropriate,

the decision . . . must establish a new principle of law, either by overruling past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

*Financeamerica*, 154 Ga.App. at 818, 270 S.E.2d 449, quoting *Chevron Oil*, 404 U.S. at 106, 92 S.Ct. at 355 (citations omitted). State Farm contends that *Jones* falls into the latter category, because *Jones* was a case of first impression whose result was not clearly foreshadowed. There is no doubt that *Jones* was indeed a case of first impression; the Court of Appeals specifically acknowledged this in its opinion. 154 Ga.App. at 232, 274 S.E.2d 623. Nevertheless, the first *Chevron Oil* factor presents a difficult question for two reasons.

First, although *Financeamerica* quoted the *Chevron Oil* "issue of first impression" language with approval, and even purport-

ed to apply it in that case, 154 Ga.App. at 818, 270 S.E.2d 449, Georgia opinions (including *Financeamerica*) in practice have limited prospective application to decisions which *overturned* a judicial opinion or statute on which the parties relied. State Farm has cited no relevant cases,[19] and the Court has found none, in which a Georgia court has granted prospective effect to a case of *first impression* whose result was not clearly foreshadowed; all Georgia decisions granting prospective effect to a judicial opinion, appear to have relied on the first "overruling clear past precedent" *Chevron Oil* clause. *Allan v. Allan,* 236 Ga. 199, 223 S.E.2d 445 (1976), and *Strickland v. Newton County,* 244 Ga. 54, 258 S.E.2d 132 (1979), for example, concerned the retroactive effect of Georgia Supreme Court decisions striking down state statutes. *Walker v. Walker,* 247 Ga. 502, 277 S.E.2d 45 (1981), and *Gainesville Financial Services* concerned the retroactive effect of decisions that explicitly overruled earlier judicial opinions. *Financeamerica* concerned the retroactive effect of a Georgia Court of Appeals opinion that overruled the implicit holdings of three earlier judicial decisions.[20] Nevertheless, dicta in both the *Financeamerica* and the *Gainesville Financial Services* opinions clearly indicate that the Georgia Court of Appeals, at least, would be willing to apply a "first impression" decision retroactively if the other *Chevron Oil* factors were present. On this authority, the Court tentatively concludes that *Jones* would qualify for prospective application by the Georgia Courts.

Second, the *Chevron Oil* requirement that the result to be applied prospectively "not [be] clearly foreshadowed" also presents some difficulty here. State Farm devotes most of its energy to arguing that the *Jones* interpretation of section 56–3404b(b), that it requires separate signature spaces, was not clearly foreshadowed. The Court rejects this argument, but nonetheless concludes that the imposition of a *penalty* for violation of section 56–3404b(b)—*i.e.,* the post-risk "continuing offer"—was not clearly foreshadowed.

The relevant part of section 56–3404b(b) provides, "Each application . . . must contain separate spaces for the insured to indicate his acceptance [or] rejection of each of the optional coverages . . . and no policy shall be issued in this State unless these spaces are completed and signed by the prospective insured." State Farm apparently argues that this statute is ambiguous because the first clause requires spaces in which the insured can "indicate" his acceptance or rejection of the coverage, while the second clause requires that these spaces be "completed and signed." Faced with these differing requirements, State Farm contends that it decided on the basis of prior Georgia insurance law that only one signature space was required, at the bottom of the application.

19. Retroactive application sometimes becomes an issue in the area of criminal procedure, when the Supreme Court holds for the first time that the Constitution mandates or prohibits a certain procedure. *See, e.g., Linkletter,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; *Contreras v. State,* 242 Ga. 369, 249 S.E.2d 56 (1978). Such criminal procedure cases generally involve the decision of a Georgia court concerning the retroactivity of a federal court decision on a question of federal constitutional law. State Farm's briefs do not refer to these cases, and the Court considers them of little relevance to the question of Georgia law presented by this diversity case.

20. *Gainesville Financial Services* characterized *Financeamerica* as involving the retroactive effect of "a question of first impression whose resolution was not clearly foreshadowed." *Gainesville Financial Services,* 154 Ga.App. at

821, 270 S.E.2d 40. The issue in *Financeamerica* was the retroactive effect of *Consolidated Credit Corp. v. Peppers,* 144 Ga.App. 401, 240 S.E.2d 922 (1977); the court refused to give retroactive effect to *Peppers. Peppers,* it held, had overruled the tacit holdings of three previous judicial opinions, and an administrative regulation based on those tacit holdings. *Financeamerica,* 154 Ga.App. at 817, 270 S.E.2d 449. *Peppers* was a "case of first impression," therefore, only in the sense that the question it addressed had never been *explicitly* decided by the Georgia courts. The reason for the *Financeamerica* court's refusal to apply *Peppers* retroactively was identical to the reasons of the *Walker* and *Gainesville Financial Services* courts; the court found that the parties had reasonably relied on prior judicial (and, here, administrative) authority. *Id.*

Although the Court agrees with State Farm that section 56–3404b(b) is internally conflicting, it does not agree that the Georgia Court of Appeals' interpretation of it should have come as a complete surprise; one of the two clauses at issue unequivocally requires that "no such policy shall be issued in this State unless these *spaces* are completed *and signed* by the prospective insured" (emphasis added). State Farm obviously ignored this clause, but claims that it relied on the fact that an earlier Georgia case [21] had held that one signature on the bottom of an insurance application was sufficient rejection "in writing" of an optional coverage. *American Liberty Insurance Co. v. Sanders,* 120 Ga.App. 1, 169 S.E.2d 342 (1969). At issue in *American Liberty,* however, was a different statute, Ga.Code Ann. § 56–407.1(a)(3), which required an insurance company to provide certain uninsured motorist coverage unless "any insured named in the policy shall reject the minimum coverage in writing." The *American Liberty* insured argued that section 56–407.1(a)(3) required a separate written rejection, but the court disagreed, holding "neither the statute nor any decision construing it" required more than one signature at the bottom of the application. 120 Ga.App. at 3, 1169 S.E.2d 342. The statutes at issue in *American Liberty* and in this case are not comparable; Ga.Code Ann. § 56–407.1(a)(3) required only that the rejection be "in writing," while Ga.Code Ann. § 56–3404b(b) requires that the acceptance or rejection be indicated in spaces that are "completed and signed." Therefore, any reliance by State Farm on the *American Liberty* opinion is misplaced. State Farm's reliance on the regulations of the Georgia Insurance Commission is equally unjustified. The regulation cited by State Farm [22] clearly does *not* state that one signature on an application form is sufficient; at best, it fails to indicate the number of required signatures.

After due consideration, the Court rejects State Farm's theory that the *Jones* separate signature result was "not clearly foreshadowed."

The "continuing offer" penalty, however, is another matter. The Court is of the opinion that, prior to *Jones,* the Act did not give fair warning of this penalty. Section 56–3404b does not explicitly mention a "continuing offer." Nowhere in the Act is there any express indication that there is a special penalty for failure to comply with its terms.[23] State Farm could reasonably have assumed that the statute set out a regulatory scheme, and left it to the Insurance Commissioner to enforce it through his customary methods.[24] Furthermore, the *Jones* court developed the notion of the

---

**21.** State Farm also cites two cases in which Georgia courts held that an insurance company can declare a policy void ab initio for fraud if an applicant makes material misrepresentations in an insurance application which he has signed at the bottom. *All American Life and Casualty Co. v. Saunders,* 125 Ga.App. 7, 186 S.E.2d 328 (1971); *Prudential Insurance Co. v. Perry,* 121 Ga.App. 618, 174 S.E.2d 570 (1970). These cases are relevant, State Farm argues, because they hold that the insured is bound by the entire application as a result of one signature. The Court rejects this argument.

**22.** The regulation cited by State Farm provides as follows:

Each application for a policy of motor vehicle liability insurance must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in this Section. All existing policyholders shall be afforded the opportunity to either accept or reject in writing the optional coverages required in this Section.

Ga.Code of Rules and Regulations § 120–2–28.06(4).

**23.** The Act does prescribe penalties for one specific violation of its terms. Ga.Code Ann. § 56–9915.2 makes it a misdemeanor to operate a motor vehicle without the insurance required by the Act. The existence of this provision indicates that the Georgia legislature did not fail to provide for penalties for other violations of the Act, such as State Farm's, out of mere inadvertence.

**24.** For example, Ga.Code Ann. § 56–214(1) gives the Insurance Commissioner the authority to issue cease and desist orders to insurers violating Georgia's insurance laws, while Ga.Code Ann. § 56–214(4) grants him the power to institute legal proceedings to enforce those laws. Under Ga.Code Ann. § 56–214(7), the Commissioner may even levy fines for violations of the insurance laws.

continuing offer by reference to section 56–3404b(c).[25] That section does not expressly indicate that its notice requirements apply to insurance contracts executed after the effective date of the Act. Its express terms appear to supplement section 56–3404b(b) by specifying the notice requirements applicable to insurance contracts in existence on the effective date of the Act. However, the Court of Appeals found the "continuing offer" by implication within section 56–3404b(c) and by synthesizing the requirements of sections 56–3404b(a), (b), and (c).

Finally, the requirement that an insurer provide post-risk coverage to an insured who never intended to purchase the coverage is a penalty which is quite novel in the insurance field. It is a penalty which one would not automatically assume would flow from the failure to comply with regulatory requirements relative to the manner in which insurance is to be offered. Therefore, it is doubly important that such penalty provision be clear in order to give fair warning.

The Court therefore concludes that the particular form of penalty resulting from a violation of section 56–3404b(b) (i.e., the post-risk "continuing offer" penalty) was "not clearly foreshadowed" by the language of the Act or by prior Georgia law.

In summary, the Court concludes that a Georgia court would not apply *Jones* retroactively. The Court reaches this result by assuming that a Georgia court would apply the test set forth in *Chevron Oil,* as did the Georgia Court of Appeals in the recent *Financeamerica* and *Gainesville Financial Services* opinions.[26] The Court holds that *Jones* was a case of first impression which

established a penalty that was not clearly foreshadowed; that the purpose and effect of the Act would be effectively served by prospective application of *Jones;* and that the equities balance out in favor of prospective application of *Jones.* Consequently, a Georgia court considering State Farm's arguments on this issue would decide to apply *Jones* prospectively only. The Court emphasizes that it considers this a close question especially as to the first *Chevron Oil* factor, i.e., the "issue of first impression" factor. However, the *Erie* doctrine requires this Court to make its best guess as to the decision of a Georgia court on this issue. *Higginbotham v. Ford Motor Co.,* 540 F.2d 762, 771 n.16 and 772 (5th Cir. 1976). This Court's best guess is that the Georgia courts would not apply *Jones* retroactively.

### 6. Conclusion

State Farm brought this action for a declaratory judgment that *Jones* does not require it to provide post-accident insurance coverage to Defendants. On the basis of the foregoing analysis, the Court has determined that the Georgia courts would apply *Jones* prospectively only, that is, that the continuing offer penalty set forth in *Jones* would apply only to those accidents that occurred after the effective date of the *Jones* decision.[27] Therefore, the only relevant fact is the date of the accident from which this case resulted. It is undisputed that this accident occurred prior to the effective date of the *Jones* decision. The Court therefore concludes that there are no material disputed facts, and summary judgment for State Farm is appropriate.

---

**25.** The text of section 56–3404b(c) is set out in Part 1 of this Opinion.

**26.** The Court has discovered only one Georgia retroactivity case decided more recently than *Financeamerica* and *Gainesville Financial Services.* That case, *Walker v. Walker,* 247 Ga. 502, 277 S.E.2d 45 (1981), contained very little analysis of the retroactivity question. The *Walker* court simply decided to apply a previous opinion prospectively "because, in our view, 'unjust results would accrue'" from retroactive application. 247 Ga. at 503, 277 S.E.2d 45, quoting *Strickland v. Newton Coun-*

ty, 244 Ga. 54, 258 S.E.2d 132 (1979). The Court believes that this "unjust results" test is subsumed within the *Chevron Oil* test as the equivalent of its "equities" prong.

**27.** The Court presently has no information regarding the date on which the State Court of Muscogee County received the remittitur of record. Presumably this occurred some time after July 7, 1981, the date on which the Georgia Supreme Court dismissed the writ of certiorari.

The Court GRANTS Plaintiff State Farm's Motion for Summary Judgment.