## 60597. BARON et al. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

CARLEY, Judge.

On October 6, 1978, the appellants, the Barons, were involved in an automobile collision. At that time Mr. Baron was operating and Mrs. Baron was a passenger in a vehicle owned by Isidor Michael, a resident of Florida. The Michael automobile was insured by State Farm under a policy providing $5,000 Personal Injury Protection coverage and issued in accordance with the Florida Automobile Reparations Reform Act. The Barons' own automobile was also insured by State Farm under a policy issued in accordance with the Georgia Motor Vehicle Accident Reparations Act. The Barons' policy afforded them $10,000 Personal Injury Protection coverage.

As the result of the collision Mrs. Baron sustained personal injuries and incurred $2,139.52 in medical expenses and $187 in "expenses reasonably incurred in obtaining from others ordinary and necessary services." The Barons made claim for those expenses and were paid under the Michael policy.

The Barons then made a claim under their own policy for the same expenses incurred as the result of the collision. State Farm,

contending that it was uncertain whether the Barons were entitled to "duplication of benefits" and that to deny the claim would subject it to possible bad faith penalties and attorney fees, petitioned for a declaratory judgment that it "may legally deny the [Barons'] claim for duplicate personal injury benefits . . ."

The Barons filed their answer to the petition for declaratory judgment, raising as one of multiple but interrelated defenses the failure of State Farm's petition to state a claim upon which relief could be granted. The Barons also counterclaimed against State Farm to recover the expenses under their policy. Thereafter the Barons filed an "Application for Hearing on Defenses," requesting the trial court to inquire into the merits of the Code Ann. § 81A-112 (b) (6) defense raised in their answer and demanding that the petition for declaratory relief be dismissed. Prior to any disposition of the application for a hearing on the Code Ann. § 81A-112 (b) (6) defense, State Farm moved for summary judgment in the case, countered by the Barons' own motion for partial summary judgment. On April 8, 1980, the trial court entered two orders. The first denied the Barons' motion for partial summary judgment and, with reference to their "Application for Hearing on Defenses," noted that "an application for an order on [the Barons'] special defenses may be made by motion under Ga. Code Ann. Section 81A-107 (b) and the [Barons] opted not to pursue this path." In the second order, the trial court granted summary judgment to State Farm. The Barons appeal from these two orders.

1. The Barons first enumerate error in the failure of the trial court "to grant the Application for Hearing on Defenses . . . and in failing to dismiss the Complaint as requested by said Application." In the order, the trial court, citing *Hayes v. Superior Leasing Corp.,* 136 Ga. App. 98 (220 SE2d 86) (1975) and *Howland v. Weeks,* 133 Ga. App. 843 (212 SE2d 487) (1975), apparently held that the merits of a Code Ann. § 81A-112 (b) (6) defense could only be pursued by motion under Code Ann. § 81A-107 (b). We believe that the trial judge misconstrued those decisions and erroneously relied upon them as authority for declining to rule on the application by reason of the Barons' failure to follow the proper procedure in pursuing their Code Ann. § 81A-112 (b) (6) defense.

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required except that the following defenses may at the option of the pleader be made by motion in writing: . . . (6) failure to state a claim upon which relief can be granted . . ." Code Ann. § 81A-112 (b). "The choice of whether to raise the § 81A-112 (b) defenses by motion or by

answer is entirely at the option of the pleader. If the choice is to proceed by motion, it must be before or at the time of the responsive pleading [or, in the special case of a § 81A-112 (b) (6) defense, any time thereafter]. [ *Southern Concrete Co. v. Carter Const. Co.,* 121 Ga. App. 573 (174 SE2d 447) (1970)] . . . The proper procedure to be followed when the defense is made by answer is application for a preliminary hearing and determination under Code Ann. § 81A-112 (d). [Cit.]" *Hayes v. Superior Leasing Corp.,* 136 Ga. App. 98, 99, supra.

In the instant case, the Barons raised their § 81A-112 (b) (6) defense in their answer, as they were clearly entitled to do. Having done so, it was procedurally correct to seek a ruling on this defense by filing their application for a hearing under Code Ann. § 81A-112 (d) rather than by making a motion under Code Ann. § 81A-107 (b). Both *Howland* and *Hayes* recognize and affirm this procedural rule. Those cases merely hold that where a § 81A-112 (b) defense has been raised by answer, the pleader should not be penalized for erroneously denominating his application under Code Ann. § 81A-112 (d) for a hearing on the defense as a motion to dismiss under Code Ann. § 81A-107 (b). "It is therefore apparent that the motion to dismiss in fact served every function of an application for preliminary hearing of a Code Ann. § 81A-112 (b) defense and should not have been denied simply because it was styled a motion." *Hayes,* 136 Ga. App. at 101, supra. Likewise, in the instant case, the Barons should not be penalized for *correctly* denominating their "Application for Hearing on Defenses" under Code Ann. § 81A-112 (d) as such, rather than as a motion.

Having determined that the procedural ground expressed by the trial court as the basis for his failure to entertain the Barons' application for a hearing on their § 81A-112 (b) (6) defense was erroneous, we turn to the question of whether that failure — as opposed to the reasons given for the failure—was, under the facts of this case, error. Thus, we must decide if it was error to fail to dismiss the petition for declaratory relief because it failed to state a claim. Suffice it to say that State Farm's petition asked for a declaration of the viability of its defenses to a claim by its insureds, the Barons, of benefits under their policy. That such a petition fails to state a claim for declaratory relief is clear beyond question. Under such circumstances "the insurer is not faced with uncertainty and insecurity of making a jeopardizing election to enter into the defense of its alleged insured or to refuse to do so; suit looms against the insurer itself and its own defenses to liability can be presented without jeopardy *when suit is entered by the claimant.* [Cit.] Under these circumstances, there being no uncertainty or insecurity with

regard to the propriety of some future act or conduct, declaratory relief will not lie. [Cit.] . . . All rights have accrued; the [insurer] is either liable under the terms of its [policy] . . . or it is not. The [insurer] faces no risk of taking future undirected action; *its defenses can be presented when suit is entered by the [claimant].* [Cit.] Therefore, the dismissal of [an insurer's] petition, which [seeks] a mere advisory opinion as to its defenses, [is] proper. [Cit.]" (Emphasis supplied.) *Shield Ins. Co. v. Hutchins,* 149 Ga. App. 742, 744-745 (256 SE2d 108) (1979). That, under these circumstances, the insurer seeks to avoid bad faith penalties and attorney fees by institution of the declaratory judgment proceeding does not insulate the petition from dismissal under § 81A-112 (b) (6). *State Farm Fire & Cas. Co. v. Gosdin,* 147 Ga. App. 156 (248 SE2d 216) (1978); *Sentry Ins. v. Almeida,* 151 Ga. App. 514 (260 SE2d 356) (1979).

Therefore, were we to view the Barons' application to dismiss the petition under § 81A-112 (b) (6) in isolation and out of context we would be compelled to the conclusion that the trial court committed reversible error in failing to consider that application and to grant it. However, when the Barons filed their counterclaim for recovery of the expenses which were the basis of State Farm's petition, they effectively turned the controversy from one in which State Farm was seeking declaratory relief into one in which they were seeking affirmative relief. The entire controversy over coverage under the policy became, at that point, a suit by the Barons for affirmative relief from State Farm and, in our opinion, rendered moot any question of whether State Farm was or was not entitled to declaratory relief. Cf. *Trainer v. City of Covington,* 111 Ga. App. 425 (142 SE2d 75) (1965). If there were any doubts before the Barons filed their counterclaim that all rights had accrued in the controversy, those doubts were removed when their counterclaim was filed. Since the issue of State Farm's entitlement to declaratory relief in the controversy was rendered moot and since there is no requirement that a counterclaim be answered, we see no reversible error in the trial court's failure to consider the Barons' application for a hearing on their Code Ann. § 81A-112 (b) (6) defense, or in the trial court's apparent consideration of the mooted petition of State Farm as its "answer" to the counterclaim, or in the trial court's disposition of the entire controversy by ruling on the merits of the Barons' and State Farm's positions as evidenced by the cross-motions for summary judgment. If any ruling by the trial court "harmed" the Barons, it was the rulings on the substantive merits of the respective motions for summary judgment and the disposition of their claim for affirmative relief thereunder and not the failure to rule on their application for dismissal of State Farm's petition for declaratory relief.

2. We now turn to the substantive merits of this case. The Barons state their position as follows: "[They] have already collected no-fault benefits from the insurer of the vehicle involved in the collision. They now seek to duplicate benefits by recovering the same sums under the insurance policy which covers their personal vehicle which was not involved in the collision." The Barons' argument that such duplication of benefits is possible is predicated upon the language of Code Ann. § 56-3407b which provides in part: "The insurer of a motor vehicle with respect to which security is required . . . shall pay basic no-fault benefits without regard to fault for economic loss resulting from: (a) accidental bodily injury sustained within the United States of America, its Territories or Possessions, or Canada by the insured and spouse and children if residing in the insured's household and the relatives of either if residents of the insured's household while occupying any motor vehicle, or while a pedestrian as the result of being struck by a motor vehicle; (b) accidental bodily injury sustained by any other person while occupying the owner's motor vehicle if the accident occurs within the United States of America, its Territories or Possessions, or Canada. . . ." The Barons argue that they are entitled, under Code Ann. § 56-3407b, to collect benefits from their own insurer under subsection (a) as well as from the insurer of the automobile in which they were riding at the time of the collision under subsection (b).

In *Georgia Cas. &c. Co. v. Waters,* 146 Ga. App. 149 (246 SE2d 202) (1978), a case involving the interpretation of the "no fault" statutory scheme, it was held that "[i]n furtherance of the aim to limit basic PIP [Personal Injury Protection] recovery to an express amount, under the statute and under the policy provisions, . . . we have an automobile related plan by which insurance 'follows the car.' That is, assuming one is occupying another vehicle or while a pedestrian is struck by another vehicle then the key question is whether the other vehicle has 'no fault' coverage. If so, insofar as the basic PIP is concerned, one must look to the insurer of the other vehicle and not to one's own insurance company . . . For, where another insured vehicle is involved, then there is no basic PIP coverage under one's own policy . . . However, where an uninsured vehicle is involved then an injured person is protected under the terms of his own policy . . . Code Ann. § 56-3403b indicates a legislative intent to prevent 'stacking' of basic PIP coverages above the limit of $5,000. What is evinced is a clear command that a maximum of $5,000 be paid. In order to obtain greater benefits the insured must obtain additional PIP. Where he does so, his policy will then cover up to those limits even where the primary policy is limited . . ." *Ga. Cas. &c. Co. v. Waters,* 146 Ga. App. at 152-153, supra. Thus,

where at the time of the collision one is occupying a vehicle "other" than his own and that vehicle has "no fault" coverage, the policy covering the "other" vehicle affords the injured party primary coverage and it is from that policy that the injured party must first seek PIP benefits. It is only when the limitations on PIP coverage under the "other" policy have been reached that the question of coverage under the PIP provisions of the injured party's own policy becomes important. The injured party is an "insured" under the PIP provisions of his own policy only to the extent that he has a claim for PIP benefits which are not met within the limits of coverage afforded him under the policy covering the "other" vehicle. In addition, such an injured party's entitlement to PIP benefits under his own policy may be further limited by the statutory command of Code Ann. § 56-3403b that, absent an election of optional PIP coverage, "[t]he total benefits required to be paid . . . shall not exceed the sum of $5,000 per each individual covered as an insured person . . ., regardless of the number of insurers providing such benefits or of the number of policies providing such coverage." Thus, where an injured party has a claim for PIP benefits in excess of the coverage limitations of the "other" basic policy, he may recover those benefits under his own basic policy only up to an aggregate amount of PIP benefits under both policies of $5,000. *National Gen. Ins. Co. v. Meeks,* 145 Ga. App. 830 (244 SE2d 920) (1978).

Applying the above stated rules to the facts of the instant case demonstrates that the Barons' claim for $2,139.52 in medical expenses has been satisfied in full under the basic PIP coverage provided to them by the policy insuring the Michael automobile. See Code Ann. § 56-3403b (b) (1). Furthermore, when their claim for $187 for ordinary and reasonable services (Code Ann. § 56-3403b (b) (3)) was coupled with their claim for medical expenses, the $5,000 limit on total PIP benefits available to them under the Michael policy was not exhausted and they have been paid in full for those services under that policy. Under our analysis of the no fault law in effect in this state the Barons would have to have medical expenses exceeding the limitation on coverage under the Michael policy (*Meeks*) or have otherwise exhausted their $5,000 in total PIP benefits under that policy (*Waters*) before they became "insureds" and entitled to a claim for benefits under the provisions of their own $10,000 optional "no fault" policy. Our "no fault" law simply does not allow duplication of PIP benefits under the circumstances that exist here. When the legitimate claims for PIP benefits exceed the coverage available under the "other" policy, our statute merely allows for the "stacking" of PIP coverage available under one's own policy upon the primary PIP coverage available under the "other" policy up to the

permissible limits of PIP coverage available under the circumstances — $5,000 in "total" benefits where only basic PIP is involved. Of course, the permissible limits would be higher when there has been an election of optional PIP coverage under Code Ann. § 56-3404b. Under our analysis, had the Barons' claim for necessary medical expenses arising from the collision exceeded the $2,500 limit on that coverage available to them under the Michael's policy or had their total claim for PIP benefits exceeded the $5,000 aggregate limit on the basic PIP coverage available thereunder, the PIP "no fault" provisions of their own policy would have been triggered and they would have been afforded coverage thereunder for the excess PIP claims up to the limits thereof. However, their PIP claims having been totally satisfied under the Michael's policy, they have no claim for any benefits available to them under the "no fault" provisions of their own policy. The Barons' arguments to the contrary are unpersuasive and unavailing. It is of no consequence to the Barons that former Code Ann. § 56-3409b (a) provided: "The benefits payable under this Chapter shall not be reduced or eliminated by any workmen's compensation benefits, medical payments benefits or any other disability benefits, wage loss benefits or hospitalization benefits that the injured person is entitled to receive." Other "no fault" benefits, such as the Barons received under the Michael policy, are not included under this statute as being among those benefits which "shall not" reduce or eliminate "no fault" benefits "payable" under the Motor Vehicle Accident Reparations Act. Under our statutory "no fault" scheme where "no fault" benefits are paid under an "other" policy, those same benefits are not otherwise "payable under" the injured party's own policy and the injured but compensated party thus has no benefits payable under our "no fault" law not to be reduced or eliminated. When an injured party is primarily insured under the "no fault" coverage of an "other" policy, the "no fault" coverage under his own policy is excess, not duplicative, coverage.

*Judgment affirmed. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED JANUARY 7, 1981 —

*Kenneth C. Pollock,* for appellants.
*Scott Barksdale, Richard Greer, Michael Wetzel,* for appellee.