75062, 75063. CANNON v. LARDNER; and vice versa.

(363 SE2d 574)

BEASLEY, Judge.

Cannon was awarded $4,300 for medical expenses and $1,000 in general damages following an automobile collision with Lardner. She contends on appeal that she was entitled to a new trial for two reasons: one, that the court erroneously admitted her answer over objection on cross-examination as to whether she was wearing her seat belt at the time of the collision; two, that statements by opposing counsel during closing arguments were improper.

Lardner cross-appealed because the court refused to deduct from the verdict the entire amount of medical expenses under the basic personal injury protection coverage of both Cannon's own insurance and her father's automobile insurance policy, under which she qualified as an insured.

*Case No. 75062*

1. Cannon argues that the trial judge should have excluded all testimony concerning whether she was using a seat belt because there is no law requiring her to do so and thus there could be no negligence in failing to use it. Lardner counters that the seat-belt evidence was relevant in regard to the issue of comparative negligence and damages, and therefore was properly admitted. We find no basis for reversal.

Appellant correctly points out that she violated no statute by failing to use the seat belt, as OCGA § 40-8-76 makes the use of safety belts mandatory only for children under the age of four years; and that subsection (d) of the statute expressly provides that any violation of it "shall not constitute negligence per se nor contributory negligence per se." However, we do not agree that allowing defense counsel to cross-examine her on this issue interjected harmful, prejudicial, irrelevant evidence into the trial which misled the jury by suggesting that she violated some duty the law placed upon her.

Civil law is not always dependent upon the standard of care imposed or defined by statute. Whereas a statutory requirement might make failure to wear a seat belt negligence per se, the common law duty to exercise ordinary care for one's own safety could authorize a jury to conclude that the standard has been violated by one who fails to use this universally available preventive device when undertaking to drive upon the highways and thereby subject oneself to injury in a potential collision. In *Atlanta Coca-Cola &c. Co. v. Jones*, 236 Ga. 448, 450 (224 SE2d 25) (1976), the Supreme Court of Georgia quoted with approval and applied the following principles: " 'All drivers of vehicles using the highways are held to the exercise of due care . . .

Each driver must exercise ordinary care in the situation in which he finds himself . . . In each case except when reasonable minds may not differ, what due care required, and whether it was exercised, is for the jury.' " This evidence was relevant in regard to comparative negligence, rather than contributory negligence, in determining the amount of damages to award as opposed to proximate cause of the collision itself. That is, it was arguably related to the proximate cause of the nature and degree of the injuries.

"The common law doctrine of 'contributory negligence' which bars recovery by a plaintiff is not followed in Georgia. [Cit.] The prevailing doctrine in this state is the comparative negligence rule, which holds 'where there is negligence by both parties which is concurrent and contributes to the injury sued for, a recovery by the plaintiff is not barred, but his damages shall be diminished by an amount proportioned to the amount of fault attributable to him, provided that his fault is less than the defendant's and that by the exercise of ordinary care he could have avoided the consequences of the defendant's negligence after it became apparent or in the exercise of ordinary care should have been discovered by the plaintiff.' [Cit.]" *Hester v. Baker,* 180 Ga. App. 627, 629 (2) (349 SE2d 834) (1986).

The trial court correctly charged the jury on the law of comparative negligence. See *Wright v. Concrete Co.,* 107 Ga. App. 190 (5) (129 SE2d 351) (1962). No objection was made to the instruction and it was a proper issue for the jury since appellant's testimony as to whether or not she was exceeding the speed limit at the time of the collision was contradictory. We conclude that evidence of appellant's use or failure to use seat belts in regard to whether such failure to use them might have contributed to the extent of her injuries was likewise relevant in determining damages. We agree with what was stated in *Wendlandt v. Shepherd Constr. Co.,* 178 Ga. App. 153, 155 (1) (342 SE2d 352) (1986), a two-judge opinion which did not decide the issue of the propriety of such a charge on the question of damages because a verdict for the defendant was returned in that case: "[M]uch can be said for a legal proposition that the failure to use an available seatbelt, in view of its potential to reduce serious injuries, could be considered by a jury as a matter of negligence by the injured party and as affecting the amount of damages to be recovered. Certainly it would be necessary to show that the actual injuries sustained could have been reduced . . . by the use of an available seatbelt." In *Cullen v. Timm,* 184 Ga. App. 80 (360 SE2d 745) (1987), the non-wearing of a seat belt by even a passenger was regarded as relevant on the issues of the passenger's ordinary care, comparative negligence, and assumption of the risk.

In this case appellant alleged that as a result of being struck by appellee's automobile she "was thrown violently about within her own

automobile and so severely jolted and battered as to sustain severe injury to her body." Since appellant's speeding and her failure to use her available seat belt were more than likely to have contributed to the severity of her injuries, and thus increase her damages, the trial court correctly allowed the jury to consider her failure to exercise ordinary care in incurring these injuries under the theory of comparative negligence so as to determine an award of damages.

2. That portion of defense counsel's closing argument to which appellant objected was as follows: "It is for you to decide what is fair to both of these parties. If you make those decisions then, and then you determine that Ms. Cannon was speeding or was exceeding the speed limit and that if she hadn't been, maybe those injuries wouldn't have occurred. Maybe she wouldn't have hit the windshield if she hadn't been exceeding the 35 miles an hour and reduce that verdict by what amount you think is appropriate to an amount that would be under $10,000, and we ask you to consider that amount as that which would be fair and reasonable to these parties. When they walk away from this courtroom today, that they can go about their business on what is a fair and reasonable verdict. Ms. Cannon can return to school and complete her schooling. Eric Lardner can go back to DeVry Tech, based on such an award, and he can continue his schooling and the parties can. . . ." Appellant's attorney objected at that point on the ground that such a comment was highly improper and prejudicial.

Although we agree that a remark insinuating that the defendant's ability to finish his course of studies depended upon whether he could afford an education after paying a large award of damages would be improper, we conclude that the statements here were salvaged by the fact that counsel referred to both the plaintiff and the defendant going back to school. Thus the argument was a plea for a fair and reasonable verdict that would award the appellant sufficiently to compensate for her injuries, suffering and time lost, but at the same time not be unduly punitive and financially burdensome to the appellee to the detriment of his education. In light of what we have previously discussed in regard to the comparative negligence of the parties, that if it were concurrent and contributed to the injury it would be a proper issue for the jury to determine, we cannot say the argument objected to was not based upon any issue in the case or improperly interjected evidence of the financial status of the appellee into the trial. While we recognize that argument which contrasts the financial status of one party with that of another is condemned, the remarks made here referred not so much to financial status as to finishing school and getting on with one's life, and they included both parties, not just one. "The remark itself 'did not intelligently reflect the overall financial status of either of the parties . . . . Under these circumstances the remark was not injurious to [appellant], was not im-

proper, and did not require either cautionary instructions to the jury or a new trial. The peroration in this case comes within the general rule that remarks of counsel while addressing the jury which do not undertake to introduce any material fact not disclosed by the evidence do not constitute improper argument.' [Cits.]" *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 273-74 (3) (329 SE2d 900) (1985). Accordingly, there was no reversible error.

## Case No. 75063

3. Cannon was insured under her own automobile insurance policy for basic PIP and for optional no-fault benefits to cover economic losses exceeding $5,000. She was also an insured under her father's policy as a resident/relative for basic PIP benefits. Her claim for medical expenses was submitted for payment under her own basic and optional PIP coverage, and she made no claim under her father's basic PIP coverage. Prior to trial counsel for both parties discussed with the court how the so called "no fault write-off" was to be effected and agreed that the medical expenses portion of the verdict should be reduced by the court. However, the parties could not agree as to the amount by which the verdict should be reduced. After the jury returned a verdict in Cannon's favor of $4,300 for medical expenses and $1,000 for pain and suffering, the trial judge deducted $2,500 for the no fault write-off, entering judgment for Cannon in the amount of $2,800. Lardner's cross-appeal contends that because Cannon had available to her basic PIP benefits under both her and her father's policies, these policies could be "stacked" pursuant to OCGA § 33-34-9 to write off the entire medical expense award, and that the trial court incorrectly refused to do so.

In support of his arguments, Lardner relies upon *Nat. Gen. Ins. Co. v. Meeks*, 145 Ga. App. 830 (4) (244 SE2d 920) (1978). As Lardner points out, *Meeks* held (two judges only) that the insured could receive up to a total of $5,000 in basic PIP medical benefits under present OCGA § 33-34-4 (a) (2) (A) and (C), "or such greater amount of coverage as has been purchased on an optional basis as provided [in Code Section 33-34-5,] regardless of the number of insurers providing such benefits or of the number of policies providing such coverage." Thus, Lardner insists, the trial court failed to follow *Meeks* in refusing to write off any sums beyond the $2,500 Cannon received under her own coverage, when the additional $1,800 awarded by the verdict could have been recovered under her father's basic PIP coverage. Cannon asserts that she was not eligible for the excess coverage provided by her father's policy because she never exhausted her own primary coverage and is entitled to recover from Lardner any amounts received under her optional no-fault coverage. See *Hall v. White*, 150

Ga. App. 545 (1) (258 SE2d 256) (1979); OCGA § 33-34-5 (a).

We are in agreement with the assessment of Cannon and the trial court in this case. Under the analysis of no-fault insurance law in this state as detailed in *Baron v. State Farm &c. Ins. Co.*, 157 Ga. App. 16 (2) (276 SE2d 78) (1981), Cannon would have to have medical expenses in excess of her policy limit of $50,000 before she became an "insured" and entitled to a claim for benefits under her father's policy. Since her medical expenses were only $4,300, her primary coverage was not exhausted and she was ineligible to receive benefits under her father's policy. See *Voyager Cas. Ins. Co. v. King*, 172 Ga. App. 269 (323 SE2d 4) (1984). Moreover, as determined in *Hall v. White*, supra at 546, the plaintiff can recover from the tortfeasor those economic losses reimbursed under her optional coverage provided by the purchase of additional PIP. See also *McGlohon v. Ogden*, 251 Ga. 625 (1) (308 SE2d 541) (1983). Such "collateral source insurance" provided by contract between the plaintiff and her insurer is not material nor relevant to any issues between the plaintiff and the tortfeasor. *City Council of Augusta v. Lee*, 153 Ga. App. 94 (2) (264 SE2d 683) (1980); *McGlohon v. Ogden*, supra. The fact that Cannon was also covered by her father's basic PIP insurance should not provide a windfall for Lardner, the tortfeasor, nor should the tortfeasor be allowed to force her to elect coverage under a third, uninvolved person's policy. It follows that the trial court correctly reduced the verdict only by the amount allowed under Cannon's basic PIP insurance.

*Judgment affirmed in case no. 75062. Deen, P. J., and Banke, P. J., concur. Birdsong, C. J., and Sognier, J., concur in the judgment only. McMurray, P. J., Carley, Pope, and Benham, JJ., dissent. Judgment affirmed in case no. 75063. Deen, P. J., McMurray, P. J., Banke, P. J., Carley, Pope, and Benham, JJ., concur. Birdsong, C. J., and Sognier, J., concur in the judgment only.*

McMurray, Presiding Judge, dissenting.

The majority of comparative negligence jurisdictions which have considered the seat belt defense have rejected it. See *Franklin v. Gibson*, 188 Cal. Rptr. 23, 25 (138 Cal. App.3d 340 (1982)); *Schmitzer v. Misener-Bennett Ford*, 354 NW2d 336, 339, fn. 3 (135 Mich. App. 350 (1984)). In my view, Georgia should join the ranks of the majority because in the absence of legislation to the contrary, the seat-belt defense is unavailable in this State. Insofar as *Cullen v. Timm*, 184 Ga. App. 80, 83 (360 SE2d 745), cited by the majority, holds to the contrary, it should be overruled.

"The comparative negligence rule in force in this State is that where there is negligence by both parties which is concurrent and contributes to the injury sued for, a recovery by the plaintiff is not barred, but his damages shall be diminished by an amount propor-

tioned to the amount of fault attributable to him, provided that his fault is less than the defendant's, and that, by the exercise of ordinary care, he could have avoided the consequences of the defendant's negligence after it became apparent or in the exercise of ordinary care should have been discovered by the plaintiff. *City of Ocilla v. Luke*, 28 Ga. App. 234 (110 SE 757)." *Rogers v. McKinley*, 48 Ga. App. 262, 265 (172 SE 662). This rule is a departure from the common-law doctrine of contributory negligence. Nevertheless, in order to invoke the comparative negligence rule, a defendant must demonstrate *negligence* on the part of the plaintiff.

Negligence entails the existence of a legal duty; the failure to exercise ordinary care with respect to the duty; and a resulting injury. *Patillo v. Thompson*, 106 Ga. App. 808, 811, 812 (128 SE2d 656). The existence of a legal duty is an essential element in the negligence formula. If there is no duty, there can be no negligence. *Southern R. Co. v. Liley*, 75 Ga. App. 489, 493 (43 SE2d 576).

Plaintiff's failure to use a seat belt cannot be said to be a breach of a legal duty. The use of seat belts is not compulsory in this state. A plaintiff "buckles up" — or fails to "buckle up" — as a matter of course and without regard to particular acts of negligence. This is as it must be. Drivers are not clairvoyant. They are entitled to rely on the presumption that other drivers will not act negligently. See *Glynn Plymouth v. Davis*, 120 Ga. App. 475, 487 (170 SE2d 848), aff'd 226 Ga. 221 (173 SE2d 691). Thus, a plaintiff has no duty to fasten a seat belt because he or she has no way of knowing that he or she will be exposed to a defendant's negligence. *Rogers v. Johnson*, 94 Ga. App. 666, 678 (96 SE2d 285). The inherent difficulty in a contrary "thesis is identifying when [plaintiff's] failure to 'buckle up' became a breach of [her] duty to use ordinary care. Obviously, the breach had to have occurred prior to the accident. To assert that [plaintiff] had a duty to use ordinary care by 'buckling up' at some point between entering [her car] and immediately prior to the occurrence of the [accident] imputes to [plaintiff] the anticipation that an accident would occur. But, as a matter of law, [plaintiff] had the right to assume that other drivers would obey traffic laws and use reasonable care." *Schmitzer v. Misener-Bennett Ford*, 354 NW2d 336, 340, supra.

In the case sub judice, plaintiff did not know or have a reason to anticipate that defendant would act negligently until immediately before the collision. It cannot be said, therefore, that plaintiff had a legal duty to fasten her seat belt. She had a right to rely on the presumption that defendant would not act negligently.

Assuming, arguendo, that the seat-belt defense is available in Georgia, I would still feel compelled to dissent in this case. "Recent decisions have held that there is *no* presumption that nonuse of seat belts caused or aggravated a party's injuries. Consequently, compe-

tent expert or other testimony must be submitted which establish that the injuries of a party would have been reduced or minimized if seat belts had been used, or were caused or aggravated by the failure to use a seat belt." *Grobe v. Valley Garbage Svc.*, 551 P2d 748, 756 (Wash. 1976). No such evidence was presented in this case. Plaintiff was simply asked whether she was wearing a seat belt at the time of the collision. She replied that she was not. Standing alone, this evidence does not show what the consequences to plaintiff would have been if she had been wearing a seat belt. In the absence of expert opinion concerning such consequences, evidence of seat belt use or non-use should be deemed inadmissible. *Grobe v. Valley Garbage Svc.*, 551 P2d 748, 756, supra; *Franklin v. Gibson*, 188 Cal.Rptr. 23, 24, supra.

In sum, in my view the trial court erred in admitting evidence of plaintiff's failure to use a seat belt. Moreover, I am of the opinion that the error was harmful, requiring a new trial. The evidence was irrelevant and prejudicial. *Placek v. City of Sterling Heights*, 217 NW2d 900, 901, 902 (Mich. App. 1974). "We have no way of knowing what consideration the jury attributed to plaintiff's failure to wear her seat belt . . . We cannot assume that the testimony elicited did not improperly influence them in their decision . . ." *Placek v. City of Sterling Heights*, 217 NW2d 901, 902, supra.

The judgment of the trial court should be reversed as to Case No. 75062.

I am authorized to state that Judge Carley, Judge Pope, and Judge Benham join in this dissent.

DECIDED NOVEMBER 16, 1987 —
REHEARING DENIED DECEMBER 4, 1987 —

*Ralph E. Hughes*, for appellant.
*Frank E. Jenkins III, Mark A. Barber*, for appellee.