## A90A0277. BALES v. SHELTON.
(399 SE2d 78)

Beasley, Judge.

Following denial of his amended motion for new trial and alternative motion for new trial on the issue of damages only, plaintiff Bales appeals. The judgment had been entered on the jury's $1,500 verdict in Bales' favor in his personal injury action stemming from a motor vehicle collision with defendant Shelton. The court ordered that Shelton was entitled to an agreed-upon credit against the $1,500 for the payment of no-fault benefits which exceeded the amount of the judgment, so judgment was deemed satisfied except for court costs.[1]

1. Bales contends the trial court erred in not granting a new trial on the general grounds at least as to damages, because the award was clearly so inadequate and so small as to justify the inference of gross mistake or undue bias on the part of the jury. He points to evidence of neck, shoulder, and back injuries allegedly sustained as a result of the rear-end collision, three hospitalizations and $13,588.60 in medical expenses, ten percent permanent functional impairment of his whole body as a result of his back injuries, and severe pain and suffering. Bales also cites what he characterizes as admissions in judicio made by defendant's counsel in closing argument to the effect that Bales had a herniated disc and that a fair figure for the verdict would be $20,000.

"The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12. "The general rule on appeal of an award of damages is that a jury's award cannot be successfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors. [Cits.] Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to 'shock the conscience.' [Cits.] . . . Moreover, the trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence. [Cits.]" *Cullen v. Timm*, 184 Ga. App. 80, 82 (2)-83 (360 SE2d 745) (1987).

The record discloses evidence before the jury that would have al-

---

[1] The original direct appeal from the $1,500 judgment was dismissed, on a ruling that an application to appeal was required under OCGA § 5-6-35 (a) (3). The Supreme Court granted certiorari and held that although application for appeal was required, the ruling was to apply prospectively and Bales was entitled to proceed in a direct appeal.

lowed it to mitigate the special damages claimed by the plaintiff. First, there was evidence minimizing the magnitude of Bales' injuries. Bales' girl friend's brother, a passenger in the car Bales was driving, testified that the only damage to their car was a little dent in the rear bumper and that he and his sister, also a passenger, were not injured. There was evidence that at the scene Bales was not bleeding, did not appear bruised, and was able to walk around. Bales' girl friend testified in deposition that from two months after the accident until she moved away, Bales did not appear to be physically impaired in any way, that his complaints did not seem to affect his daily activities, and that she saw him more than once play football. There was further evidence that following the mishap, Bales engaged in many sports activities.

Second, there was evidence that at least a portion of Bales' physical complaints was unrelated to the collision. Bales had congenital back problems and some of the medical expenses predated the collision. The jury itself pointed out that some medical bills were generated earlier.

"Damages are compensation for the injury sustained, and the burden of showing them is on the complainant; where it is duplicative, ambiguous and confusing, mere skimpiness unattended by facts realistically demanding a higher figure will not cause reversal. [Cits.]" *Brooks v. Williams*, 127 Ga. App. 311, 313 (2) (193 SE2d 231) (1972).

The assertion that counsel made admissions in judicio of $20,000 in damages does not change the result. Defendant's counsel argued in closing that the jury should return a verdict in favor of the defendant but that if the jury awarded damages, it should be a fair figure, to compensate. Counsel then suggested $20,000. This was not an admission of fact in judicio but merely counsel's opinion or conclusion in the nature of an assessment. See *Aiken v. Dept. of Transp.*, 171 Ga. App. 154, 155 (2) (319 SE2d 58) (1984); *Georgia Cas. &c. Co. v. Jernigan*, 166 Ga. App. 872, 876 (4) (305 SE2d 611) (1983).

In light of the controverted evidence of damages, $1,500 is not so flagrantly inadequate as to shock the conscience and require another jury determination.

2. Bales contends that the trial court erred in refusing to allow cross-examination of defendant Shelton regarding his traffic charge and guilty plea to the offense of following too closely. The trial court ruled that the proper way to show defendant's conviction was to introduce a certified copy of the guilty plea. Bales maintains that the testimony was admissible as an admission against interest and as an admission in judicio during the taking of defendant's deposition. He cites no supporting authority and claims prejudice but does not elaborate on how he was harmed.

Plaintiff in cross-examination of defendant was not attempting to

prove the existence of the plea itself but rather to elicit testimony from defendant about the traffic charge and its disposition to show by admission that the defendant was at fault. Thus plaintiff was not required to produce a certified copy of the plea. See *Roper v. Scott*, 77 Ga. App. 120, 122 (2)-125 (48 SE2d 118) (1948); see also *Edwards v. Bullard*, 131 Ga. App. 34, 36 (3)-38 (205 SE2d 115) (1974). Prohibiting the cross-examination was error, but Bales has neither alleged nor shown harm. A guilty plea admitted by defendant would have evidenced fault. Since the jury determined defendant was negligent, the error was harmless. Without harm there is no reversible error. *Atlanta Americana &c. Corp. v. Sika Chem. Corp.*, 117 Ga. App. 707, 710 (4)-712 (161 SE2d 342) (1968).

3. Bales contends that the trial court erred in overruling his motion in limine, allowing videotaped deposition testimony of his treating physician regarding Bales' absence of a seat belt and shoulder harness and the consequences from use or nonuse, and instructing the jury about nonuse. He maintains that the doctor's testimony was irrelevant and improper in that no evidentiary foundation had been laid and the doctor was not competent to testify since he had not been qualified as an expert with respect to consequences from the use or nonuse of a seat belt shoulder harness.

a) When the case was tried, evidence of plaintiff's failure to use an available seat belt could be considered by the jury on the question of damages subject to a showing that the injuries could have been reduced by use of a seat belt. See *Sapp v. Johnson*, 184 Ga. App. 603, 606 (3) (362 SE2d 82) (1987); *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821, 822 (3) (a) (354 SE2d 6) (1987); see also, although not controlling, *Cannon v. Lardner*, 185 Ga. App. 194, 195 (1) (363 SE2d 574) (1987); *Wendlandt v. Shepherd Constr. Co.*, 178 Ga. App. 153, 154 (1) (342 SE2d 352) (1986).[2] Therefore, the trial court did not err in denying Bales' motion in limine insofar as it sought suppression of any reference or evidence pertaining to Bales' use or nonuse of a seat belt. In fact, Bales testified that at the time of the collision he was not wearing the seat belt and shoulder harness and that upon impact, his whole body was thrust forward into the steering wheel.

b) In deposition, the physician testified that he was licensed to practice medicine in Georgia with a specialty in orthopedic surgery. He further testified that the specialty involved the investigation, preservation, restoration, and development of the form and function of the spine, extremities, and related structures by medical, physical, and surgical methods. He said Bales had told him that the impact

---

[2] OCGA § 40-8-76.1 (d), effective September 1, 1988 is not applicable to this case. See *Jones v. Scarborough*, 194 Ga. App. 468 (1) (a) (390 SE2d 674) (1990).

had knocked him forward and Bales hit his head on the steering wheel and broke it; he further stated that Bales' injuries seemed causally related.

The doctor was asked if he was familiar with the use of seat belts and shoulder harness restraints. Plaintiff's counsel objected without stating a basis. The doctor replied that he knew what seat belts were and what they were used for. The doctor was asked if he would agree that one use was to prevent someone from being thrown forward or around or coming in contact with inside parts of an automobile if involved in an accident. He responded "yes" and plaintiff's counsel again objected without stating a basis.

On the assumption that Bales was thrown forward inside the automobile and struck the steering wheel, defendant's counsel asked the doctor for his opinion as to whether the use of a seat belt or shoulder harness would have prevented Bales from being thrown forward into or making contact with the steering wheel. Plaintiff's counsel again objected without explanation. The doctor replied that if the seat belt or shoulder harness worked properly, he thought it would probably have kept Bales from hitting the steering wheel.

Plaintiff's counsel objected to the injection of the issue of seat belts as irrelevant and further on the ground that the doctor had not been qualified as an expert in accident reconstruction or the use of seat belts. The doctor was asked to make the same assumption that Bales was thrown forward and hit the steering wheel and to give his opinion as to whether or not the type of blow sustained by Bales could have been lessened or prevented by the use of a shoulder harness or seat belt. The doctor's opinion was that the seat belt or regular lap belt by itself probably would have made no difference but that the shoulder harness would have lessened the impact some.

"The question of whether a witness is qualified to give his opinion as an expert is one for the court. [Cit.] [Its] determination will not be disturbed except that it be manifestly abused." *Department of Transp. v. Great Southern Enterprises*, 137 Ga. App. 710, 712 (1) (225 SE2d 80) (1976). To qualify as an expert, " 'special knowledge may be derived from experience as well as study. (Cits.) Formal education in the subject at hand is not a prerequisite for expert status.' [Cits.]" *Brown v. State*, 245 Ga. 588, 590 (1) (266 SE2d 198) (1980).

Defendant adduced the doctor's familiarity with seat belts and shoulder harnesses and their usage. This in conjunction with his unquestioned orthopedic expertise and his thorough knowledge of Bales' physical condition following the failure to use the harness amounted to special knowledge. Therefore, any failure or inability on defendant's part to produce more formal credentials was not fatal to the doctor's opinion in regard to the hypothetical. In *City of Fairburn v. Cook*, 188 Ga. App. 58 (372 SE2d 245) (1988) there was *no* indication

that the deposed physician possessed any expertise whatsoever in the area of seat belt usage.

We find no manifest abuse of the trial court's discretion in permitting the objected-to testimony.

c) Bales claims that the court erred in instructing the jury about reducing damages because of his nonuse of the seat belt shoulder harness since there was no competent evidence to justify such instruction.

Contrary to Bales' contention, the doctor's testimony in conjunction with his own was sufficient to support the given charge. Compare *F. A. F. Motor Cars v. Childers*, supra at 822 (3) (a). No harm can be shown in the giving of the charge anyway because, based on other evidence, the jury was also instructed on proximate cause and the plaintiff's duty to exercise ordinary care and to mitigate his damages, as additional bases for reducing any award. See *Jones*, supra at 469 (1) (b).

4. Bales contends that the evidence did not support a jury instruction on sudden emergency.

The court charged that "one who is confronted with a sudden emergency which was not created by his own fault and is without sufficient time to determine accurately and with certainty the best thing to be done, is not held to the same accuracy of judgment as would be required of him if he had more time for deliberation. The requirement of such a person is that he act with ordinary diligence under all the particular facts and circumstances surrounding the situation."

This addressed the pivotal issue of defendant's exercise of ordinary care or lack thereof, and since defendant was found negligent Bales can show no harm from the charge.

In any event, "an instruction [on sudden emergency] is authorized where there is evidence [,as here,] that a party 'was required to make quick judgments on the immediate action to be taken without having time for mature reflection.' [Cit.]" *Martini v. Nixon*, 185 Ga. App. 328, 329 (3) (364 SE2d 49) (1987).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 24, 1990 —
REHEARING DENIED NOVEMBER 8, 1990.

*Smolar, Pelletier, Roseman & Barnes, Anne E. Barnes, Thomas A. Rice*, for appellant.

*Blasingame, Burch, Garrard & Bryant, E. Davison Burch, Frederick A. Bading, Hudson & Montgomery, David R. Montgomery, Ca-*

*rey & Walker, Jack M. Carey*, for appellee.